# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CREOLA C. REESE,

               Plaintiff,

               v.

LOEW'S MADISON HOTEL CORP.,

               Defendant.

Civil Action No. 13-1331 (BAH)

Judge Beryl A. Howell

## MEMORANDUM OPINION

The plaintiff, Creola C. Reese (the "plaintiff"), is seeking compensation for damages she sustained allegedly as a result of bed bug bites during her stay in the summer of 2010 at the Madison Hotel, located at 1177 15th Street, N.W. in Washington, D.C. and operated by Defendant Loew's Madison Hotel Corp. (the "defendant"). *See* Compl. ¶ 2, ECF No. 3. She asserts two causes of action, for breach of contract and violation of the District of Columbia Consumer Protection Procedures Act ("DCCPA"), D.C. Code § 28-3905. *See* Compl. ¶¶ 32–41. Pending before the Court are the defendant's motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim, ECF No. 2, and the plaintiff's motion for leave to file an amended complaint, pursuant to Federal Rule of Civil Procedure 15(a), ECF No. 13. For the reasons stated below, the defendant's motion to dismiss is granted and the plaintiff's motion for leave to amend her complaint is denied as futile.[1]

---

[1] The defendant has also moved, pursuant to Local Civil Rule 7(f), for a hearing on its pending motion to dismiss, Def.'s Mot. Hr'g at 1, ECF No. 6, but this request is denied as unnecessary in light of the adequacy of the briefing and in the interest of judicial economy.

## I.    BACKGROUND

The Complaint and the proposed Amended Complaint, ECF No. 13-2, contain nearly identical factual allegations, *compare* Compl. ¶¶ 4–31 *with* Proposed First Am. Compl. ("PFAC") ¶¶ 4–33, but the proposed Amended Complaint asserts four additional claims, *see* PFAC ¶¶ 45–61.  The proposed Amended Complaint also clarifies the relief sought in this lawsuit, stating that the plaintiff is seeking "$300,000 for compensatory damages, punitive damages, treble damages under D.C. Code § 28-3905(k)(1), out of pocket expenses, plus interests [sic] and costs, including attorney [sic] fees."  PFAC at 11.  The factual allegations made in the operative Complaint, as well as the additions set out in the proposed Amended Complaint, are summarized below.

The plaintiff's claims arise from her six-day stay in late July and early August, 2010 at the defendant's hotel in Washington, D.C.  *See generally* Compl.  On July 31, 2010, the plaintiff checked into the Madison Hotel and was assigned to Room 817.  *Id.* ¶ 5.  The next day, on August 1, 2010, "the plaintiff began to itch."  *Id.* ¶ 6.  She responded by "throwing the bed pillows on the floor, taking the wool blanket off the bed, summon[ing] the hotel maid to change the sheets while the plaintiff was present, and . . . request[ing] that the throw pillows remain off of the bed."  *Id.*  Despite these steps, the plaintiff alleges that she continued to experience itching.  *Id.* ¶ 8.

The plaintiff then had the sheets changed a second time and also took the additional steps of "spreading towels in the bed and over the pillows" before going to sleep on the evening of August 2.[2]  *Id.* ¶¶ 7–8.  The next morning, August 3, the plaintiff found "swelling and multiple red bumps and welts on her face, neck[,] arms, hands, legs and buttocks."  *Id.* ¶ 9.  The plaintiff had the sheets on her bed changed a third time.  *Id.*  To alleviate the itching, the plaintiff

---

[2] All dates referenced occurred in 2010, unless otherwise noted.

purchased and used two over the counter antihistamines. *See id.* ¶ 10. Despite taking the antihistamines, the plaintiff awoke on August 4 with "more swelling, welts and lesions on her buttocks, thighs, legs, hands, face and arms." *Id.* ¶ 11. The plaintiff avers that the bumps now had "white heads" and "some had red rings around them." *Id.* The bumps "were very painful as well as itchy." *Id.* The plaintiff continued to use the antihistamines and "realized that she had become extremely agitated and anxious." *Id.*

At 1:00 a.m. on August 5, the plaintiff's "right hand muscles began to tighten and she believed she was having a stroke." *Id.* ¶ 12. She called the front desk and "requested to see a doctor," leading to a telephone conversation with a third-party doctor at 1:15 a.m. *See id.* The doctor offered his opinion "that the bites were bed bug bites" and that the plaintiff needed a steroid injection "as soon as possible." *Id.* ¶ 13. The doctor told the plaintiff the steroid injection would cost $600 if the doctor came to the hotel to treat her. *Id.* The plaintiff declined the steroid injection, averring that she "did not have either insurance or that much cash on her at the time," which prompted the doctor to advise her to continue taking the antihistamines she had purchased and to get an "Aveeno bath from CVS." *Id.*

Following her conversation with the doctor, the plaintiff "called the front desk to tell someone in management" that the doctor believed her bites were caused by bed bugs. *Id.* ¶ 15. A member of the hotel's housekeeping staff was sent to change the plaintiff's sheets again, but upon seeing "her red bumps, welts and swelling, he told her that changing the sheets would not be sufficient and that he would move her to another room," Room 617. *Id.* ¶ 16.

At approximately 9:30 a.m. on August 5, the plaintiff requested to speak with the "general manager" at the front desk. *Id.* ¶ 17. The plaintiff subsequently had a conversation with the general manager, Larry Beiderman, who allegedly told the plaintiff that "he had never

seen bed bugs on the face like that because they are usually on the arms and legs." *Id.* The plaintiff avers that she "had never mentioned bed bugs" prior to Beiderman's statement. *Id.*

Beiderman instructed the plaintiff to contact his administrative assistant to "make arrangements for the plaintiff to see a doctor." *Id.* ¶ 18. The plaintiff subsequently received a call from a dermatologist who, upon hearing a description of the plaintiff's concerns, "confirmed that the lesions were caused by bed bugs." *Id.* That evening, August 5, Beiderman's administrative assistant paid for a cab for the plaintiff to visit the dermatologist, "Dr. Unger," at his office, where the plaintiff was told "the bites were serious" and she was given several medications and a "non-oilated bath." *Id.* ¶¶ 19–20. The plaintiff was advised "not to travel for a few days, to cancel her flight home on Friday [August 6] and to return to see [the dermatologist] the next day." *Id.* ¶ 20. Dr. Unger also called the defendant's hotel and "told Mr. Beiderman . . . that the plaintiff needed to be closely monitored over the next 48 hours and he specifically requested that someone knock on her door or telephone her to check on her" because the plaintiff's "condition was very serious." *Id.* ¶ 21.

Upon her return to her hotel, the plaintiff states that "the bed bug bites started to become more painful" when the "Epipen injector" the doctor had given her "wore off." *Id.* ¶ 23. The plaintiff avers that she "became extremely agitated and anxious." *Id.* Eventually, the plaintiff requested a transfer to another hotel and was moved "in the early hours of Friday, August 6." *Id.* ¶ 24. The plaintiff avers that no one from the hotel checked on her. *See id.* ¶ 22.

The plaintiff states that she left "a voice message" for "the Department of Health Community Hygiene to report the bed bug infestation" at the defendant's hotel "prior to departing [for] home." *Id.* ¶ 26. She further states that she "made a follow up call" on August 9,

and was told by a department employee that the employee "would follow up himself with the Madison." *Id.* ¶ 28.

The plaintiff declined to cancel her flight home after learning it would cost "$1,000 to reschedule her departure," and returned home to Louisiana early on the morning of August 6. *See id.* ¶ 24–25. In order to avoid the possibility of bringing the bed bugs home with her, the plaintiff "threw her entire suitcase containing all of her clothes and other items in the trash." *Id.* ¶ 25. After returning home, the plaintiff visited an emergency room at a local hospital where she was prescribed additional medications. *Id.* ¶ 27. During the evening of August 9 and the morning of August 10, she "experienced vomiting after taking the medications [and] sleeplessness from the itching and pain." *Id.* ¶ 29. The plaintiff returned to her local hospital on August 10 where she was prescribed an anti-nausea medication. *See id.* ¶ 30.

The plaintiff avers that she "suffered weeks of nausea, vomiting, paranoia, sleeplessness, itching and pain from the bed bug bites;" that she incurred medical and travel related expenses; that she experienced "mental and emotional distress from paranoia, anxiety and sleeplessness, and visible scarring on her body;" and that she incurred "months of lost income from her cancelled consulting contracts, cancelled book appearances and cancelled life coaching appearances." *Id.* ¶ 31.

On August 5, 2013, three years after the plaintiff's ill-fated stay at the defendant's hotel began, the plaintiff filed the instant lawsuit in the Superior Court for the District of Columbia. *See id.* at 1 (bearing filing stamp from D.C. Superior Court showing action filed on August 5, 2013). As noted, that Complaint asserts two causes of action: Breach of Contract (Count I) and Unlawful Trade Practices under the D.C. Consumer Protection and Procedures Act, D.C. Code § 28-3905. *Id.* ¶¶ 32–41. The defendant subsequently removed the action to this Court and moved

to dismiss the Complaint for failure to state a claim on the same date. *See* Not. of Removal at 1, ECF No. 1; Def.'s Mot. Dismiss at 1, ECF No. 2.[3] The plaintiff subsequently moved for leave to amend the complaint. *See* Pl.'s Mot. Lv. File Pl.'s Am. Compl. at 1, ECF No. 13.

The proposed First Amended Complaint would add only three allegations to the original Complaint, namely: (1) that the plaintiff "had come to Washington, D.C. to attend to family matters while staying at the Madison and to attend a business convention at the Madison as a consultant/independent contractor," PFAC ¶ 5; (2) that the plaintiff "reasonably believed that the room that she was assigned . . . would be free of any and all vermin, thoroughly cleaned, and fit for her to stay in," *id.* ¶ 6; and (3) that when she checked in to the defendant's hotel, "she was not told that there had ever been a bed bug infestation in any of the rooms prior to her arrival," *id.* ¶ 20. At the same time, the proposed Amended Complaint would add four causes of action for breach of the implied warranty of merchantability pursuant to D.C. Code § 28:2-314, *id.* ¶¶ 45–48 (proposed Count III); negligence, *id.* ¶¶ 49–53 (proposed Count IV); negligent infliction of emotional distress, *id.* ¶¶ 54–56 (proposed Count V); and fraud, *id.* ¶¶ 57–61 (proposed Count VI).[4]

## II.    LEGAL STANDARD

### A.    Motion To Dismiss For Failure To State A Claim

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face" and to "nudge[ ] [his or her] claims across the line from conceivable to plausible." *Bell Atl. Corp. v.*

---

[3] This Court has diversity jurisdiction over this matter, pursuant to 28 U.S.C. § 1332, since the plaintiff is domiciled in Louisiana, Compl. ¶ 2, the defendant is domiciled in New York, Not. Removal ¶ 6, ECF No. 1, and the amount of the alleged damages exceeds $75,000, PFAC at 11 (claiming $300,000 in damages).

[4] The plaintiff notes in the proposed Amended Complaint that, in relation to Count I for breach of contract, the plaintiff "was unable to locate either the original or a copy of the Madison contract that she received and executed upon registering for her room and key in time to attach the contract as an exhibit to the amended complaint," but the plaintiff was "endeavor[ing] to obtain the contract and submit it at a later time." *Id.* ¶ 37 n.1.

*Twombly,* 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 12(b)(6).  "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 557).  Instead, the complaint must plead facts that are more than "'merely consistent with' a defendant's liability" but provide sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678 (quoting *Twombly,* 550 U.S. at 557); *accord Rudder v. Williams,* 666 F.3d 790, 794 (D.C. Cir. 2012).  The Court "must assume all the allegations in the complaint are true (even if doubtful in fact) . . . [and] must give the plaintiff the benefit of all reasonable inferences derived from the facts alleged."  *Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc.,* 525 F.3d 8, 17 (D.C. Cir. 2008) (citations and internal quotation marks omitted).

## B.  Motion For Leave To Amend

"[T]he grant or denial of leave to amend is committed to a district court's discretion." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996).  While leave to amend a complaint should be freely granted when justice so requires, *see* Fed. R. Civ. P. 15(a)(2), the Court may deny a motion to amend if such amendment would be futile.  *Foman v. Davis,* 371 U.S. 178, 182 (1962); *Hettinga v. United States*, 677 F.3d 471, 480 (D.C. Cir. 2012) (citing *James Madison Ltd. By Hecht v. Ludwig,* 82 F.3d 1085, 1099 (D.C. Cir. 1996)).  Where a plaintiff cannot "allege additional facts that would cure the deficiencies in her complaint," a District Court acts within its discretion in denying leave to amend the complaint as futile.  *See Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 131 (D.C. Cir. 2012).

## III.    DISCUSSION

The defendant argues that the Complaint should be dismissed and leave to file the proposed Amended Complaint denied as futile for three reasons.[5]  First, the defendant asserts that the plaintiff's claims in both the original and proposed Amended Complaint, are barred by the applicable statutes of limitation.  *See* Def.'s Mem. Supp. Def.'s Mot. Dismiss ("Def.'s Mem.") at 4, ECF No. 2-1; Def.'s Opp'n Pl.'s Mot. Lv. Amend ("Def.'s Opp'n") at 2, ECF No. 16; Def.'s Reply Pl.'s Opp'n Def.'s Mot. Dismiss ("Def.'s Reply") at 3, ECF No. 19.  Second, the defendant contends that the plaintiff's claim for breach of contract is deficient since neither the Complaint nor the proposed Amended Complaint plead a breach of contract claim with the requisite specificity.  *See* Def.'s Mem. at 4; Def.'s Reply at 3.  Finally, the defendant argues that the plaintiff's claim pursuant to the DCCPA must fail because the plaintiff has not pleaded a "material misrepresentation" as required by the statute and because the plaintiff was not a "consumer" within the meaning of the DCCPA when the events giving rise to this action allegedly occurred.  *See* Def.'s Mem. at 5–7; Def.'s Reply at 4.  The Court first addresses the defendant's motion to dismiss before turning to the plaintiff's motion for leave to amend the complaint.

---

[5] The parties do not address the applicable law in their briefing, but each party's contentions are predicated on the application of District of Columbia law.  *See* Def.'s Mem. Supp. Def.'s Mot. Dismiss ("Def.'s Mem.") at 4, ECF No. 2-1 (arguing District of Columbia statutes of limitation apply to the plaintiff's claims); Pl.'s Opp'n Def.'s Mot. Dismiss ("Pl.'s Opp'n") at 2, ECF No. 18 (arguing for application of equitable tolling under District of Columbia law).  Indeed, when exercising diversity jurisdiction, state law provides the applicable substantive rules of law.  *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938).  Therefore, the Court will apply District of Columbia law to this case.  *Burke v. Air Serv Int'l, Inc.*, 685 F.3d 1102, 1107 (D.C. Cir. 2012) ("The 'broad command of Erie,' of course, is that 'federal courts are to apply state substantive law and federal procedural law' when sitting pursuant to their diversity jurisdiction.") (quoting *Hanna v. Plumer*, 380 U.S. 460, 465 (1965)); *see also Arias v. DynCorp*, 752 F.3d 1011, 1013 (D.C. Cir. 2014); *Cordoba Initiative Corp. v. Deak*, 900 F. Supp. 2d 42, 46 n.2 (D.D.C. 2012) (applying District of Columbia law in diversity suit where "[b]oth parties applied District of Columbia law in their motion papers without engaging in any choice of law analysis"); *Piedmont Resolution, L.L.C. v. Johnston, Rivlin & Foley,* 999 F.Supp. 34, 39 (D.D.C. 1998) (same).

### A.    The Plaintiff's Claims Are Time-Barred

When considering a motion to dismiss, a court must "look only at the complaint," which often precludes dismissal based on statutes of limitation. *See de Csepel v. Republic of Hungary*, 714 F.3d 591, 604 (D.C. Cir. 2013). Since determinations of whether a cause of action is time-barred "often depend on contested questions of fact, dismissal is appropriate only if the complaint on its face is conclusively time-barred." *Id.* at 603 (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996); *see Bregman v. Perles*, 747 F.3d 873, 875 (D.C. Cir. 2014) (same). Thus, if the claims asserted in the Complaint and the proposed Amended Complaint are, as the defendant argues, "conclusively time-barred," making all reasonable inferences in favor of the plaintiff, the defendant's motion to dismiss should be granted. *See Bregman*, 747 F.3d at 875. If the claims are only arguably time-barred, the motion to dismiss must be denied. *See de Csepel*, 714 F.3d at 604 (noting that arguably time-barred claim could be dismissed at summary judgment stage after further factual development).

Both the Complaint and proposed Amended Complaint state that "the events described . . . arose[] from Saturday, July 31, 2010 through Thursday, August 5, 2010." Compl. ¶ 2; PFAC¶ 2. The Complaint was filed in District of Columbia Superior Court on August 5, 2013. *See* Compl. at 1 (bearing filing stamp dated August 5, 2013 from the Superior Court of the District of Columbia). The two claims alleged in the Complaint, breach of contract and unlawful trade practices in violation of the DCCPA, are governed by a three-year statute of limitations. *See* D.C. Code §§ 12-301(7) (stating three-year statute of limitations "on a simple contract, express or implied"); 12-301(8) (stating three-year statute of limitations for all actions "for which a limitation is not otherwise specially prescribed"); *Murray v. Wells Fargo Home Mortg.*, 953 A.2d 308, 323 (D.C. 2008) ("the three year residual statute of limitations applies to claims brought under the Consumer Protections Procedure Act"). Since this action was filed on August

5, 2013, the plaintiff's claims would be conclusively time barred if they accrued before August 5, 2010, absent any tolling of the statutes of limitation. *See id.* Thus, the time of accrual of the breach of contract and DCCPA claims must be examined to determine whether they are barred by the applicable statutes of limitation before examining the availability of any equitable tolling.

### 1. *Count I: Breach Of Contract*

The plaintiff's breach of contract claim in Count I is supported by the factual allegation that "[t]he plaintiff and the [defendant] entered into a binding contract when the plaintiff made reservations to stay there from July 30 through August 5 [sic] and paid money as consideration for their bargain." Compl. ¶ 33. The plaintiff claims the defendant "breached their contract when it placed the plaintiff in a room that was infested with bed bugs which is not what the plaintiff had bargained for at the time she entered into their contract." *Id.* ¶ 35. This "cause of action for breach of contract accrues, and the statute of limitations begins to run, at the time of the breach." *Murray*, 953 A.2d at 319–20 (quoting *Eastbanc, Inc. v. Georgetown Park Assocs. II, L.P.*, 940 A.2d 996, 1004 (D.C. 2008)).

Under District of Columbia law, a claim accrues "from the moment a party has either 'actual notice of her cause of action,' or is deemed to be on 'inquiry notice' by failing to 'act reasonably under the circumstances in investigating matters affecting her affairs,' where 'such an investigation, if conducted, would have led to actual notice.'" *Medhin v. Hailu*, 26 A.3d 307, 310 (D.C. 2011) (quoting *Harris v. Ladner*, 828 A.2d 203, 205–06 (D.C. 2003)). Moreover, a statute of limitations "running is not delayed simply because the claimant does not know (or cannot be charged with knowledge of) the full 'breadth or nature' of the defendant's wrongdoing." *Id.* (quoting *Brin v. S.E.W. Investors*, 902 A.2d 784, 792 (D.C. 2006)). If "the relationship between the fact of injury and conduct is obscure, the so-called 'discovery rule' will apply, such that the claim does not accrue until the claimant knows or by the exercise of

reasonable diligence should know of (1) the injury, (2) its cause in fact, and (3) some evidence of wrongdoing." *Id.* (citing *Bussineau v. President and Dirs. of Georgetown Coll.*, 518 A.2d 423, 435 (D.C. 1986)). In this case, even assuming, without deciding, that "the relationship between the fact of [the plaintiff's claimed] injury and [the defendant's] conduct is obscure," such that the "discovery rule" applies to this matter, *id.*, the plaintiff's breach of contract claim is time-barred.

The basis of the plaintiff's breach of contract claim is that the defendant "placed the plaintiff in a room that was infested with bed bugs," Compl. ¶ 35, after she checked into the hotel on July 31, 2010, *id.* ¶ 5. She sustained sufficient discomfort from itching her very first night to take steps to have her bedding changed and, by the night of August 3, 2010, the plaintiff was allegedly "in agony and distress from the itching" brought on by "multiple red bumps and welts on her face, neck[,] arms, hands, legs and buttocks," *id.* ¶¶ 9–10. Indeed, between the time she checked into her room on July 31, 2010, and the time she called a doctor in the early morning hours of August 5, the plaintiff asked the defendant's staff to change the bedding in her room at least three times, *id.* ¶¶ 6, 7, 9, and purchased medication to treat her symptoms, *id.* ¶ 10.

The plaintiff argues that she did not learn the cause of her injury until advised by a physician on August 5, 2010 that the cause was bed bugs and this revelation tolls the accrual of the statute of limitations until that date. Pl.'s Opp'n Def.'s Mot. Dismiss ("Pl.'s Opp'n") at 2, ECF No. 18 ("the plaintiff didn't become aware of the cause of her physical condition or of any possible wrongdoing by the defendant until Thursday, August 5, 2010 . . . . Thus, all of her injuries and suffering from the beginning of her ordeal at the defendant's hotel up to and including August 5, 2010 and thereafter, would be within the three year statute of limitations for purposes of this lawsuit."). The Court disagrees.

The plaintiff took steps after her each of her first three nights at the hotel to have the bed linens changed, on August 1, 2, and 3, *see* Compl. ¶¶ 6, 7, 9, indicating from these efforts that she was cognizant as early as August 1, 2010 that the source of her condition was the hotel room. Moreover, a person exercising reasonable diligence, accepting all facts in the Complaint as true, would have certainly known she was injured by the evening of August 3, when she describes her condition as "agony and distress from the itching," prompting her to purchase a "large bottle of liquid Benadryl and Benadryl itch cream, which she administered to herself . . . ." *Id.* ¶ 10. The plaintiff was also certainly aware, at the latest, by 6:00 a.m. on August 4, 2010, when she states she was "horrified to see more swelling, welts and lesions on her buttocks, thighs, legs, hands, face and arms," *id.* ¶ 11, that she had been sustaining injury from the condition of her hotel room. A person exercising reasonable diligence would have called a doctor by this point, particularly since the plaintiff avers that she had already purchased antihistamines and applied them without relief. *See id.* ¶¶ 10–11. Had she exercised such reasonable diligence, she would have learned the cause of her injury—bed bugs—and have had some evidence of the wrongdoing alleged, i.e., that the defendant placed her in a room infested with bed bugs, the conduct on which her breach of contract claim is predicated. *See id.* ¶ 35.

In a case involving similar facts to the instant matter, *Duarte v. Cal. Hotel & Casino*, No. 08-185, 2008 U.S. Dist. LEXIS 69991, at *9–11 (D. Haw. Sept. 5, 2008), a court similarly found the plaintiffs' claims were time-barred, despite the plaintiffs' allegations of fraudulent concealment. In *Duarte*, the plaintiffs filed suit outside the presumably applicable statute of limitations under Hawaii law for injuries they allegedly suffered from bed bug bites at the defendant's hotel. *See id.* The court found that one plaintiff had notice, as a matter of law, on

the first day she experienced symptoms from the bed bug bites. *Id.* at *9–10.[6]  Specifically, the

*Duarte* court found that the presence of "very itchy" welts that "increased in number and size"

on one of the plaintiffs' bodies was sufficient to "at the very least [provide] notice that (1) the

Hotel had provided Plaintiff a room with insects in it, (2) Plaintiff contracted a rash from these

insects, and (3) the Hotel room had caused her injuries." *Id.* at 10.  As in *Duarte*, the plaintiff's

claim in this action could be deemed to accrue on August 1, 2010, the first day on which the

plaintiff alleges she experienced symptoms from the bed bug bites and, through her requests for

linen changes, the plaintiff indicated her recognition of the source but, even if not then, her claim

accrued over the next three days, when her symptoms continued and worsened. *See* Compl. ¶ 6–

10.

    Nevertheless, the plaintiff argues that the applicable statutes of limitation should be tolled

and not begin running until August 5, 2010.  *See* Pl.'s Opp'n at 2 ("[T]he plaintiff didn't become

aware of the cause of her physical condition or of any possible wrongdoing by the defendant

until Thursday, August 5, 2010.").  In support of this contention, the plaintiff relies on two cases,

*Richards v. Mileski*, 662 F.2d 65 (D.C. Cir. 1981), and *Friedman v. Manfuso*, 620 F. Supp. 109

(D.D.C. 1985), for the proposition that when misrepresentation is pleaded, the applicable statutes

of limitation are tolled "unless the facts show that the plaintiff 'should have known' of the

wrongdoing by the defendant."  Pl.'s Opp'n at 2.  In essence, the plaintiff contends that, under

the discovery rule, she cannot be imputed with constructive notice until she was told by a doctor

that she had been bitten by bed bugs.  *See id.*  The facts and holdings of the cases relied upon by

---

[6] The *Duarte* court also found that, under Hawai'i law, tolling of the applicable statute of limitations for fraudulent concealment did not apply where the plaintiff had "a known cause of action" since "[i]f there is a known cause of action there can be no fraudulent concealment."  *Duarte*, 2008 U.S. Dist. LEXIS 69991, at *11 (quoting *Au v. Au*, 626 P.2d 173, 178 (Haw. 1981)).

the plaintiff bolster the conclusion that the applicable statutes of limitation should not be tolled in the instant matter.

In the first case relied on by the plaintiff, *Richards*, the D.C. Circuit found the applicable statutes of limitations for a "variety of tort injuries" were potentially tolled for a government employee who had resigned under duress after being falsely accused of homosexual activity. *See Richards*, 662 F.2d at 67–68. Critically, the plaintiff "remained unaware" of a memorandum filed five days after his resignation in which the government investigator assigned to the plaintiff's case "explicitly stated that the informant [on whom the investigator relied] was unpredictable and unreliable, and that his charges against [the plaintiff] had no substance." *Id.* at 68. The plaintiff did not learn of the investigator's misrepresentation regarding the accusation that prompted the plaintiff's resignation until the filing of a Freedom of Information Act ("FOIA") request twenty-three years later. *Id.* The plaintiff filed suit less than one year after learning of the memorandum's existence. *Id.*

The D.C. Circuit in *Richards* noted that "the tortious conduct about which [the plaintiff] complains is the defendants' knowing and malicious use of false information to obtain [the plaintiff's] resignation under duress." *Id.* at 69. Since the plaintiff averred that "he did not know of that conduct because it was fraudulently concealed from him until he received the FOIA documents," the D.C. Circuit held that the applicable three-year statute of limitations was tolled. *Id.*

*Richards*, however, does not stand for the proposition, as the plaintiff contends, that *any* evidence of fraud or misrepresentation is sufficient to toll an otherwise applicable statute of limitations. *See* Pl.'s Opp'n at 2. Rather, in *Richards*, the D.C. Circuit held that the District of Columbia's tolling principles applied in cases of "fraudulent concealment" or

"misrepresentation" when "the defendant commit[ed] some positive act tending to conceal the cause of action from the plaintiff, although any word or act tending to suppress the truth is enough." *Richards,* 662 F. 2d at 70. In misrepresentation cases, "the local statutes of limitation are tolled . . . until such time as the misrepresentation should have been discovered." *Id.* The D.C. Circuit in *Richards* tolled the statute of limitations because the defendants "affirmatively suppressed the truth . . . by misrepresenting to [the plaintiff] that they had testimony they considered reliable indicating that he was a homosexual, when in fact they had no such evidence," and took "affirmative acts" to prevent the plaintiff "from realizing that he had a cause of action against them." *Id.* The D.C. Circuit made clear that even when fraudulent concealment or misrepresentation is present, the statute of limitations may still apply if "the plaintiff failed to exercise due diligence in discovering the material facts underlying his cause of action," but that the plaintiff in *Richards* had not uncovered the basis for his claim due to the defendants' conduct. *Id.* at 71. Specifically, the *Richards* defendants had "failed to present any facts showing that [the plaintiff] could have discovered earlier their knowing use of false charges against him," nor shown "any circumstances that should have given [the plaintiff] special reason to make a FOIA request," which eventually uncovered the memorandum revealing the defendants' wrongdoing. *Id.* Since the plaintiff "had no reason to suspect that such a request would reveal the startling possibility that the officials with whom he had worked had conspired against him," the plaintiff could not be found to have failed to exercise due diligence by waiting more than two decades to file his FOIA request. *Id.*

The basis for tolling the limitations period for the plaintiff's claims in *Richards* stands in stark contrast to the facts in the instant matter. Here, the plaintiff does not plead any affirmative misrepresentations made to the plaintiff or, indeed, any representations at all regarding the

presence or absence of bed bugs in her room. *See generally* Compl. The only two statements the plaintiff attributes to any employees of the defendant regarding the presence of bed bugs in her room are found in paragraphs 15 through 17 of the Complaint. In paragraphs 15 and 16, the plaintiff alleges that after she called the hotel front desk in the early morning hours of August 5 "to tell someone in management what the doctor had told her about the bites . . . being caused by bed bugs," the hotel sent a housekeeping staff member to her room to change her sheets. *See* Compl. ¶¶ 15–16. Upon arrival in her room, the plaintiff alleges that the defendant's employee "told [the plaintiff] that changing the sheets would not be sufficient and that he would move her to another room immediately." *Id.* ¶ 16. Later that morning, when the plaintiff went to complain to the hotel's general manager, the plaintiff alleges that the manager told her "that he had never seen bed bugs on the face like that because they are usually on the arms and legs."[7] *Id.* ¶ 17. By contrast to the affirmative misrepresentations made by the *Richards* defendants about having reliable information of the plaintiff's activities when, in fact, the defendants had no such information, the statements attributed here to the defendant's employees contain no representation whatsoever about the presence or absence of bed bugs in the plaintiff's room at any point during her stay, which began on July 31, 2010. Compl. ¶ 5.

The other case the plaintiff relies on for her equitable tolling argument, *Friedman*, militates strongly *against* applying equitable tolling in this matter. In *Friedman*, the plaintiff

---

[7] The plaintiff notes that she "had never mentioned bed bugs" to the general manager prior to his statement to her about not previously having seen bed bug bites on a person's face. Compl. ¶ 17. This is immaterial for at least two reasons. First, the plaintiff had already informed hotel staff that she had been diagnosed with bed bug bites and been transferred to a different room for that reason prior to the plaintiff asking to speak to the general manager. *See id.* ¶¶ 15–16. Thus, it is not a reasonable inference to attribute the general manager's comment to some preexisting knowledge of a bedbug infestation in Room 817 separate and apart from the plaintiff's own calls to "someone in management" regarding the source of her malady. *See id.* Second, the plaintiff admits that the general manager made the comment "[w]hen the plaintiff showed [him] her bite marks." *Id.* ¶ 17. The general manager's alleged spontaneous comment after seeing the bite marks cannot support a reasonable inference that the general manager knew of bed bugs in the plaintiff's room. If anything, such a comment is merely "consistent with [the] defendant's liability," which is insufficient factual content on which to allow a complaint to move past a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Twombly,* 550 U.S. at 557

16

alleged that the defendant had "fraudulently withheld material facts concerning the change in computation of [the plaintiff's] royalties" for a license the plaintiff issued for the manufacture of a patented product. 620 F. Supp. at 113. The plaintiff contended that even though his claim would ordinarily be time-barred, "the fraudulent concealment of material facts tolled the running of the statute until plaintiff's discovery of the breach." *Id.* at 114.

The *Friedman* court made two observations directly relevant to the instant case. First, it noted that, in the District of Columbia, "the tolling of the statute of limitations requires . . . some affirmative act tending to conceal the cause of action or a misrepresentation, even if the misrepresentation does not hide the cause of action itself." *Id.* (citing *Richards*, 662 F.2d at 70). Second, the *Friedman* court noted that "'[c]oncealment by mere silence is not enough. There must be some trick or connivance intended to exclude suspicion and to prevent discovery of the cause of action by the use of ordinary diligence.'" *Id.* (quoting *Poole v. Terminix Co. of Md. and Wash., Inc.*, 84 A.2d 699, 702 (D.C. 1951)). The *Friedman* court clarified this rule by stating "[a]ny statement, word, or act, however, which tends to suppress the truth may constitute fraudulent concealment." *Id.* (citing *William J. Davis, Inc. v. Young*, 412 A.2d 1187, 1192 (D.C. 1980)).

The plaintiff's Complaint does not allege an "affirmative act tending to conceal the cause of action or a misrepresentation." *Id.* at 114. Rather, the Complaint notes that the defendant's employees responded promptly to every request the plaintiff made, be it changing the sheets while the plaintiff was present, providing access to a doctor, or moving her to another hotel. *See* PFAC ¶¶ 7, 8, 10, 13, 26. The Complaint also indicates the defendant's employees took several actions the plaintiff did not request in an effort to alleviate her concerns. *See* PFAC ¶ 17 (moving the plaintiff to a different room instead of merely changing the sheets in her room

again); *id.* ¶ 19 (making arrangements for plaintiff to see a dermatologist after plaintiff alerted

defendant of the bed bug bites); *id.* ¶ 21 (procuring transportation for plaintiff to dermatologist).

At best, the plaintiff has alleged "concealment by silence," which is insufficient to toll

any applicable statutes of limitations. *See Friedman*, 620 F. Supp. at 114. Absent any allegation

of misrepresentation or any affirmative act by the defendant, the plaintiff's complaint fails to

provide any grounds to toll the applicable statutes of limitation.

Thus, even applying the "discovery rule" to the plaintiff's claim for breach of contract,

her claim accrued as early as August 1 and no later than August 4, 2010, when a person

exercising reasonable diligence would have learned of her injury, its cause in fact, and some

evidence of wrongdoing. *See Medhin*, 26 A.3d at 310. Since she filed suit more than three years

after that date, on August 5, 2013, the plaintiff's breach of contract claim is time-barred.

### 2. *Count II: Violation Of The DCCPA*

The plaintiff claims that the defendant violated the DCCPA's prohibition on "unlawful

trade practices" when it "conceal[ed] and misrepresent[ed] the existence of a bed bug infestation

in some of the rooms of the Madison." Compl. ¶ 40. As previously noted, the DCCPA is subject

to a three-year statute of limitations. *See* D.C. Code § 28-3905; *id.* § 12-301(8). The statute

specifically provides for a tolling of the statute of limitations upon the "filing of a complaint with

the Department [of Consumer and Regulatory Affairs] . . . until the complaint has been resolved

through an administrative order, consent decree, or dismissal . . . ." *Id.* § 28-3905(a). Although

the plaintiff alleges that she made a complaint to the District of Columbia's Department of

Health Community Hygiene, Compl. ¶¶ 26, 28, the plaintiff does not allege that she made a

complaint to the District of Columbia's Department of Consumer and Regulatory Affairs, which

resides in a separate District of Columbia agency from the Department of Health, and the

plaintiff does not assert any tolling is applicable under D.C. Code § 28-3905(a). *See generally*

Pl.'s Opp'n (arguing for equitable tolling based on discovery rule but not under DCCPA statutory tolling mechanism).

Under District of Columbia law, a DCCPA "claim accrues for purposes of the statute of limitations at the time the injury actually occurs." *Murray*, 953 A.2d at 324 (quoting *Colbert v. Georgetown Univ.*, 641 A.2d 469, 472 (D.C. 1994) (en banc)). Here, the plaintiff alleges that the violation of the DCCPA occurred when the defendant allegedly "conceal[ed] and misrepresent[ed] the existence of a bed bug infestation in some of the rooms of the Madison." Compl. ¶ 40. Considering the fact that the plaintiff alleges that she was bitten by bed bugs during her first night in Room 817, July 31, 2010, this alleged concealment or misrepresentation had to have occurred when she checked into the hotel and was assigned that room. *See id.* ¶¶ 5–6 (stating the plaintiff "began to itch" on August 1, 2010). The plaintiff does not allege that the defendant made any other representations to her until after she was admittedly aware of the bed bug infestation on August 5, 2010, when she had her first conversation with the hotel's general manager. *See id.* ¶ 17. Thus, the plaintiff has alleged that this cause of action accrued on July 31, 2010, unless the discovery rule tolls the statute of limitations.

As previously noted, a plaintiff exercising reasonable diligence would have discovered the bedbug infestation and the cause of her alleged injuries as early as August 1 and no later than August 4, 2013. *See* Part III.A.1, *supra*. Consequently, the plaintiff's claim for violation of the DCCPA, Count II, is time-barred.

\*     \*     \*

The Complaint, as pleaded, does not state a claim upon which relief can be granted because both claims raised in the Complaint are time-barred.[8] Consequently, the defendants'

---

[8] The proposed Amended Complaint adds several factual allegations to the plaintiff's breach of contract and DCCPA claims, *see* PFAC ¶¶ 36, 37 n.1, 40, 44, but none of these minor amendments correct the deficiencies in the

alternative grounds for dismissal need not be reached. The Court next considers the plaintiff's motion to amend her Complaint to determine whether the three additional factual allegations and four claims in the proposed Amended Complaint are timely filed and otherwise state a claim or whether, as the defendant contends, this motion should be denied as futile.

### B.     The Proposed Amended Complaint

As previously noted, the proposed Amended Complaint adds the following four causes of action: Count III for breach of the implied warranty of merchantability pursuant to D.C. Code § 28:2-314, PFAC ¶¶ 45–48; Count IV for "negligence (premises liability)," *id.* ¶¶ 49–53; Count V for negligent infliction of emotional distress, *id.* ¶¶ 54–56; and Count VI for fraud, *id.* ¶¶ 57–61. Each new claim is evaluated below.

#### 1.     *Proposed Count III: Breach Of The Implied Warranty Of Merchantability Pursuant to D.C. Code § 28:2-314*

The defendant argues that the plaintiff's proposed claim for breach of the implied warranty of merchantability, under D.C. Code § 28:2-314, is time-barred and therefore should not be allowed as futile. *See* Def.'s Opp'n at 2. Unlike the plaintiff's other claims, however, claims for breach of the implied warranty of merchantability are subject to a four-year statute of limitations. *See* D.C. Code § 28:2-725; *see also Long v. Sears Roebuck & Co.*, 877 F. Supp. 8, 13–14 (D.D.C. 1995) ("the statute of limitations that applies to the claims for breach of express and implied warranties is four years in . . . the District of Columbia."). Consequently, this claim

---

Complaint, namely, that the claims are time-barred and not subject to tolling. *See* Part III.A.1–2, *supra*. Specifically, whether the plaintiff believed there would be "vermin" in her room prior to her arrival and whether the defendant's hotel is a "five-star luxury hotel," *see* PFAC ¶¶ 6, 36, is immaterial to whether she exercised reasonable diligence in discovering the source of her injury, *see* Part III.A.1–2, *supra*. The plaintiff's assertion that she was never told there was a bed bug infestation at the defendant's hotel during her stay, PFAC ¶ 20, is, at best, "'[c]oncealment by mere silence,'" which is insufficient to trigger equitable tolling of the applicable statutes of limitation. *See Friedman*, 620 F. Supp. at 114. Whether the plaintiff was a "consumer" for DCCPA purposes, *see id.* ¶ 40, and whether she suffered "actual physical and emotional injuries," *id.* ¶ 44, as a result of the defendant's allegedly unlawful trade practices is similarly immaterial. The proposed amendments to these claims are therefore futile.

is not time-barred, since the events allegedly giving rise to the claim occurred after August 5, 2009 (four years prior to the filing of the Complaint). *See id.*

Nonetheless the plaintiff's claim for breach of the implied warranty of merchantability fails to state a claim for relief. D.C. Code § 28:2-314 is part of the Uniform Commercial Code – Sales, which has been adopted by the District of Columbia. *See* D.C. Code § 28:2-101 *et seq.* By its terms, the section is limited to "transactions in goods." D.C. Code § 28:2-102. "Goods" are defined in the statute as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the prices is to be paid, investment securities (Article 8) and things in action." D.C. Code § 28:2-105(1). A hotel room is not a "good" within the meaning of the Uniform Commercial Code and that Code section. *See* D.C Code § 28:2-105 cmt. 1 ("The definition of goods is based on the concept of movability . . . . [i]t is not intended to deal with things which are not fairly identifiable as movables before the contract is performed."). Consequently, the plaintiff may not claim a breach of the implied warrant of merchantability, as set forth in D.C. Code § 28:2-314. *See Margarito v. Life Prods. Corp.*, No. 97CV95, 1998 WL 171332, at *3 (E.D. Va. Apr. 1, 1998) (holding that "hotel room is real property" and finding "UCC warranty provisions do not extend to" situation involving injury in hotel room); *Ely v. Blevins*, 706 F.2d 479, 481 (4th Cir. 1983) ("[W]hile an innkeeper is often held to a specially high duty of care, the general rule, nationally, falls short of warranty" of merchantability); *see also Kennedy v. Vacation Internationale, Ltd.*, 841 F. Supp. 986, 991 (D. Haw. 1994) (finding no warranty of fitness for use applied to time-share management company's condominiums and dismissing implied warranty of merchantability claim); *Clancy v. Oak Park Village Athletic Ctr.*, 364 N.W.2d 312, 315 (Mich. Ct. App. 1985) (holding that "leased chattels real or premises" do not "carry a general implied

warranty of fitness").  Thus, permitting amendment of the Complaint with the proposed claim for breach of the implied warranty of merchantability under D.C. Code § 28:2-314 would be futile.

### 2. *Proposed Counts IV and V: Negligence (Premises Liability) and Negligent Infliction of Emotional Distress*

The plaintiff alleges, "upon information and belief," that the defendant "had actual or constructive notice of the existence of a bed bug infestation in room numbered 817 or in other rooms in the hotel when the plaintiff was assigned room number 817."  PFAC ¶ 52. Nevertheless, the defendant assigned her to room 817 on July 31, 2010.  PFAC ¶ 5.  By doing so, according to the plaintiff, the defendant "breached its duty to the plaintiff when it assigned her to a room that was infested with bed bugs and as a result of this breach, the plaintiff suffered actual physical and emotional injuries and financial losses in her business ventures."  *Id.* ¶ 53. Similarly, the plaintiff's claim for negligent infliction of emotion distress is based on the defendant's "breach of the implied warranty that the plaintiff would be given a room for normal usage and its breach of its duty to provide a reasonably safe room to the plaintiff."  *Id.* ¶ 55.

Under District of Columbia law, a negligence cause of action accrues "at the time the injury actually occurs."  *Perry v. Scholar*, 696 F. Supp. 2d 91, 96 (D.D.C. 2010) (quoting *Knight v. Furlow*, 553 A.2d 1232, 1234 (D.C. 1989)).  The plaintiff pleads that the "injury" in question was, for the negligence claim, the defendant's assigning the plaintiff "to a room that was infested with bed bugs,"  PFAC ¶ 53, and for the negligent infliction of emotional distress claim, when the plaintiff was given a room that was allegedly not "reasonably safe," *id.* ¶ 55.  The room assignment occurred on July 31, 2010.  *Id.* ¶ 5.  As previously noted, a reasonable plaintiff exercising reasonable diligence would have discovered the bed bug infestation and the cause of her alleged injuries as early as August 1, 2, or 3, but certainly no later than August 4, 2013.  *See* Part III.A.1–2, *supra*.  Thus, these claims are time-barred.

### 3. *Proposed Count VI: Fraud*

The plaintiff alleges that the defendant committed fraud when the plaintiff was not informed "on July 31, nor during her stay . . . that the Madison had been experiencing a bed bug infestation in some of its rooms prior to her arrival." PFAC ¶ 58. A claim for fraud accrues "when the plaintiff has knowledge of (or by exercise of reasonable diligence should have knowledge of) (1) the existence of the injury, (2) its cause in fact, and (3) some evidence of wrongdoing." *Richards v. Duke Univ.*, 480 F. Supp. 2d. 222, 235 (D.D.C. 2007) (quoting *Knight*, 553 A. 2d at 1234). As previously discussed, a person exercising reasonable diligence would have discovered that her room was infested with bed bugs as early as August 1, 2, or 3, but certainly no later than no later than August 4, 2010. *See* Part III.A.1–2, *supra*. Thus, this claim is time-barred.

## IV. CONCLUSION

For the foregoing reasons, of the six claims in the proposed Amended Complaint, five are time-barred conclusively, since a person exercising reasonable diligence would have known of her injury, its cause in fact, and had some evidence of wrongdoing as early as August 1, 2, or 3, but certainly no later than August 4, 2010. *See Knight*, 553 A.2d at 1234. The final claim, for breach of the warranty of merchantability pursuant to D.C. Code § 28:2-314, fails to state a claim upon which relief can be granted. Thus, the defendant's motion to dismiss the Complaint is granted and the plaintiff's motion for leave to amend is denied, since the proposed Amended Complaint would not survive a motion to dismiss, making the proposed amendments futile.

An appropriate Order accompanies this Memorandum Opinion.

Date: August 28, 2014

_____
BERYL A. HOWELL
United States District Judge